IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-31021

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CARLIXTO SIERRA

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
(2:05-CR-101-1)

Before GARZA and DENNIS, Circuit Judges, and MILLS, District Judge.[*]

PER CURIAM:[**]

This criminal case involves two Fourth Amendment issues -- the legality of an investigatory stop and the defendant's subsequent consent to search his vehicle -- as well as various voir dire and trial evidentiary issues. For the following reasons, we affirm the district court's denial of the motion to suppress and the judgment of conviction.

I. BACKGROUND FACTS

---

[*] Chief Judge of the Northern District of Mississippi, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On March 17, 2007, Carlixto Sierra ("Sierra") was stopped by Tangipahoa Deputy Sheriff Kevin Womack for improper lane usage on Interstate 12 near Hammond, Louisiana. Approaching the passenger side window of the vehicle, Deputy Womack asked Sierra for his driver's license, informed him why he was being stopped, and asked him about his travel plans. Deputy Womack did not ask Sierra to exit the vehicle because Sierra is handicapped, evidenced by the "handicapped" sticker hanging on his rearview mirror. Sierra informed Deputy Womack that although he had a New Jersey driver's license, he recently moved to Atlanta, Georgia. He further indicated that he was returning to Atlanta from Houston, Texas where he was visiting his family and helping his sister move. Because Sierra was driving a rental car, Deputy Womack asked to see the rental agreement. During the encounter, Deputy Womack noticed that Sierra was extremely nervous and had several bags of snack foods on the floorboard.

Deputy Womack took Sierra's documents and returned to his police unit to run a computer check. Before doing so, he called DEA Task Force Agent ("TFA") Karl Newman for backup. TFA Newman arrived in approximately four minutes and Deputy Womack explained to him that he called for back-up because of Sierra's extreme nervousness. After the computer check came back clean, Deputy Womack filled out a consent form to search Sierra's vehicle. He then asked TFA Newman to take Sierra out of his vehicle and bring him back to the police unit so he could issue the citation. Upon bringing Sierra back to the police unit, TFA Newman noticed in plain view of the front passenger seat that Sierra had maps of the McAllen-Edinburg area of Texas, which, according to Deputy Womack, is a popular drug trafficking area near the border of Mexico.

Instead of immediately issuing the citation, Deputy Womack again asked Sierra about his travel plans. This time, Sierra indicated that he was helping his brother move, not his sister. At this point, TFA Newman pulled Deputy Womack aside and informed him about the maps. Deputy Womack asked Sierra

if he had been to the McAllen-Edinburg area of Texas. Sierra responded no. Deputy Womack asked him why he had the maps. Sierra did not respond.

Deputy Womack issued the citation, handed over Sierra's documents, and explained to Sierra that he could either pay the fine by mail or come to the courthouse on the designated date. Sierra thanked Deputy Womack, indicated that he understood, and began walking back to his vehicle. Deputy Womack then asked Sierra if he had anything illegal in his vehicle, specifically listing various illegal items. With respect to each item, Sierra responded no. When TFA Newman asked about "coca," however, Sierra smirked. At this point, Deputy Womack asked Sierra for consent to search the vehicle and handed him the written consent form. Sierra informed Deputy Womack that he could not read English. Deputy Womack responded that the reverse side was in Spanish. Sierra read and signed the form. Upon searching the vehicle, Deputy Womack discovered a package of cocaine underneath the rear bumper.[1]

---

[1] The consent form states that "I, Carlixto Sierra, have a clear understanding that I have been informed of the following":

Number 1: I have not been promised anything in exchange for my permission to this search.

Number 2: I have not been threatened in any way or have not been obligated to offer my permission voluntarily to have my vehicle/home searched.

Number 3: I completely understand that I have the right to refuse to have my vehicle/domicile searched.

Number 4: I completely understand that I have the right to end the consent for search at any time that I wish.

Number 5: I completely understand that if anything illegal is found as a result of the search, it can be used against me in a court of law.

Number 6: I am sober and I am competent and I am intelligent enough to understand this document and my rights.

Number 7: I can read, write, and understand the Spanish language.

Sierra was indicted on one count of possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). He moved to suppress the cocaine on the ground that it was seized during a traffic stop that was unreasonable in its duration and that his subsequent consent to search the vehicle was invalid. After a hearing, the district court denied the motion. The case proceeded to trial and the jury returned a guilty verdict. Sierra was sentenced to 121 months of imprisonment. Sierra appeals, challenging the denial of his motion to suppress and raising various voir dire and trial evidentiary issues.

## II. STANDARDS OF REVIEW

Upon reviewing a district court's ruling on a motion to suppress evidence under the Fourth Amendment, this court reviews its factual determinations for clear error and the ultimate Fourth Amendment conclusions de novo. United States v. Brigham, 382 F.3d 500, 506 n.2 (5th Cir. 2004) (en banc) (citing United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003)). The evidence is considered in a light most favorable to the prevailing party. Id. (citing Gonzales, 328 F.3d at 758). This court reviews a district court's conduct of voir dire for abuse of discretion. United States v. Munoz, 150 F.3d 401, 412 (5th Cir. 1998) (citing United States v. Rasco, 123 F.3d 222, 231 (5th Cir. 1997)). This court also reviews a district court's evidentiary rulings for abuse of discretion. United States v. Sosa, 513 F.3d 194, 200-01 (5th Cir. 2008) (citing United States v. Griffin, 324 F.3d 330, 347 (5th Cir. 2003); United States v. Mendoza-Medina, 346 F.3d 121, 127 (5th Cir. 2003)). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." Id. (quoting United States v. Ragsdale, 426 F.3d 765, 774 (5th Cir. 2005)). "[O]ur review of evidentiary rulings in criminal trials is heightened." Id. (citing Mendoza-Medina, 346 F.3d at 127; United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991)).

## III. ANALYSIS

### A. Fourth Amendment Issues

Sierra challenges both the legality of the investigatory stop and his consent to search the vehicle. We address each in turn. The legality of an investigatory stop is tested in two parts. First, this court examines whether the officer's actions were justified at the inception of the stop. Brigham, 382 F.3d at 506. Second, this court examines whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. Id. (citing Terry v. Ohio, 392 U.S. 1, 19-20 (1968)). The legality of the initial stop is not in dispute in this case. Thus, we focus solely on whether the subsequent actions by the officers were reasonably related in scope to the circumstances to justify Sierra's continued detention.

"[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." Id. at 507 (citing United States v. Dortch, 199 F.3d 193, 200 (5th Cir. 1999); United States v. Machuca-Barrera, 261 F.3d 425, 434 (5th Cir. 2001)). This court has found no constitutional impediment to an officer requesting to examine a driver's license, vehicle registration, or rental papers, run computer checks, ask about the purpose and itinerary of the trip, and even inquire about subject matters unrelated to the purpose of the stop. Id. at 507-08 (citations omitted). An officer may also temporarily detain a person for investigatory purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity "may be afoot." See United States v. Sokolow, 490 U.S. 1, 7 (1989). The suspicion required to justify such a detention need not rise to the level of probable cause but must be based on more than an un-particularized suspicion or hunch. Id. In determining whether reasonable suspicion exists, this court focuses on the totality of the circumstances and considers the collective knowledge and

experience of the officers involved.  United States v. Holloway, 962 F.2d 451, 459 & n.22 (5th Cir. 1992).

If the computer check comes back clean, then, as a general matter, reasonable suspicion disappears and there is no legitimate reason for extending the stop.  United States v. Lopez-Moreno, 420 F.3d 420, 431 (5th Cir. 2005).  "A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed."  Id.  Thus, "[i]t is not the duration of time, but the quantity of evidence, that determines whether reasonable suspicion survives the officer's background check."  United States v. Jensen, 462 F.3d 399, 406 n.7 (5th Cir. 2006).  If there is no reasonable suspicion to continue the detention once the computer check comes back clean, then "a constitutional violation occur[s] the moment the detention continue[s] past that point."  Id.; see also Brigham, 382 F.3d at 510 ("[A]fter the computer checks came up 'clean,' [and] there remain[s] no reasonable suspicion of wrongdoing by the vehicle occupants. . . . [c]ontinued questioning thereafter unconstitutionally prolonged the detentions.").

Here, once the computer check came back clean, instead of immediately releasing Sierra, Deputy Womack continued to detain Sierra, hold his documents, and initiate a second round of questioning.[2]  The Fourth Amendment requires reasonable suspicion of criminal activity to do so.  Nervousness alone is insufficient to create reasonable suspicion of criminal activity.  United States v. Portillo-Aguirre, 311 F.3d 647, 656 n.49 (5th Cir. 2002).  However, the government argues that Deputy Womack had reasonable suspicion to continue

---

[2] The parties rely, in part, on TFA Newman's trial testimony to clarify what occurred during the stop.  However, this court's "review is limited to the evidence at the suppression hearing."  United States v. Moorberry, 732 F.2d 390, 400 n.13 (5th Cir. 1984).  Thus, we rely solely on the evidence as it was presented at the suppression hearing.

the detention because Sierra's nervousness was coupled with (1) the presence of snack foods, (2) maps of known drug trafficking border towns, (3) inconsistent responses to questions, and (4) smirking when asked about "coca." However, only the first two facts arose before the initial purpose of the stop had been fulfilled. Because the remaining two facts arose afterwards, we do not consider them when determining whether Deputy Womack had reasonable suspicion to continue the detention. See Jensen, 462 F.3d at 404 (refusing to consider facts that did not arise "before the initial purpose of the stop [had] been fulfilled"). Although we have doubts that the mere presence of snack foods, which most likely accompany any road trip, is indicative of criminal activity, it is undisputed that upon bringing Sierra back to the police unit and prior to the fulfillment of the initial purpose of the stop, TFA Newman observed the McAllen-Edinburg maps in plain view on the passenger seat of the vehicle. We agree that the presence of maps of popular drug trafficking border towns not included in a driver's expressed itinerary coupled with nervousness creates reasonable suspicion of criminal activity. Accordingly, based on the collective knowledge of Deputy Womack and TFA Newman, we conclude that there was reasonable suspicion to continue Sierra's detention and that Sierra's Fourth Amendment rights were not violated. See United States v. Waldrop, 404 F.3d 365, 369-70 (5th Cir. 2002) (holding the collective knowledge doctrine applies when the relevant officers are present at the scene and there is "some general communication between the officers").

Sierra also challenges his consent to search the vehicle. To determine whether consent was validly given, this court determines whether the consent was voluntary, which, in turn, depends on the following factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's

education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

Jensen, 462 F.3d at 406 (quoting United States v. Jones, 234 F.3d 234, 242 (5th Cir. 2000)).[3] The government bears the burden of proof and this court reviews the district court's finding of voluntariness for clear error. Id. (citing United States v. Shabazz, 993 F.2d 431, 438 (5th Cir. 1993)). Here, the district court concluded that consent was voluntary because (1) Sierra was in the process of returning to his vehicle, (2) Sierra cooperated during the stop, (3) Sierra most likely did not believe that any incriminating evidence would be found because the cocaine was located in a very remote spot, (4) the consent form clearly informed Sierra of his right to refuse consent, and (5) there is no evidence that Sierra was particularly unintelligent. The district court clearly erred in finding that Sierra was in the process of returning to his vehicle when Deputy Womack sought consent to search the vehicle. Instead, Deputy Womack testified that when he sought consent to search the vehicle, he and TFA Newman were questioning Sierra for a third time, inquiring about the presence of illegal items in the vehicle. Although a "consensual interrogation can follow the end of a valid traffic stop," United States v. Sanchez-Pena, 336 F.3d 431, 442 (5th Cir. 2003), "a statement by a law enforcement officer that an individual is suspected of illegal activity is persuasive evidence that the fourth amendment has been implicated." United States v. Gonzales, 79 F.3d 413, 420 (5th Cir. 1996) (citing United States v. Valdiosera-Godinez, 932 F.2d 1093, 1099 (5th Cir. 1993)). Given that Deputy Womack and TFA Newman were questioning Sierra for a third time, specifically inquiring about the presence of illegal items, the first two factors, voluntariness of defendant's custodial status and presence of coercive

---

[3] Because the investigative stop was constitutional, we need not determine whether Sierra's consent to search the vehicle was an "independent act of free will." See United States v. Khanalizadeh, 493 F.3d 479, 484 (5th Cir. 2007) (citing Jenson 462 F.3d at 407).

police procedures, weigh more in Sierra's favor than the district court might have recognized. Nonetheless, given that the remaining factors tend to support the district court's finding of voluntariness, we agree that the district court did not clearly err in its ultimate conclusion that consent was voluntary.

B.    Voir Dire Issue

During voir dire, several jurors -- some unidentified in the record -- spontaneously expressed their view that an arrest could signify guilt. The district court then explained:

> You all earlier on said just because he's indicted that didn't mean he was guilty. So, that would mean what you're saying is every arrest, why do we have a trial? Every arrest is then you're guilty. So, then you don't believe in the presumption of innocence and if you really don't believe that you need to say that and you'll be challenged for cause. So, you need to be honest, and if you don't believe that, if you don't believe people are presumed innocent until proved guilty by evidence, you need to stand up and say that, and if you honestly believe it under oath, then that's a reason for you not to be on this jury. It's as simple as that. So, if you do not believe in the presumption of innocence, stand up.

According to the record, no juror stood up. Defense counsel did not raise any objections to the district court's corrective measure; nor did he make any further inquiries into the matter. On appeal, however, Sierra argues that the district court's corrective measure was inadequate because there is a strong possibility that potentially biased veniremen ended up on the panel. "Absent an abuse of discretion and showing that the rights of the accused have been prejudiced thereby, the scope and content of voir dire will not be disturbed on appeal." United States v. Garcia-Flores, 246 F.3d 451, 458 (5th Cir. 2001) (quoting United States v. Black, 685 F.2d 132, 134 (5th Cir. 1982)); see also United States v. Armendariz-Mata, 949 F.2d 151, 156 (5th Cir. 1991) ("If the overall conduct of voir dire protects a defendant's rights, the trial court's actions will be upheld.").

Here, Sierra's contention that the district court's corrective measure was inadequate is based on pure speculation as he cannot identify a single biased veniremen that ended up on panel. Moreover, the district court adequately explained to the veniremen that if they believe an arrest is evidence of guilt, then they do not believe in the presumption of innocence and cannot sit on the panel. It then instructed any member to standup if they did not believe in the presumption of innocence. No member did so. A district court is in the best position to evaluate the reaction of the jury panel. Id. Sierra's argument that the district court could have adopted a more effective curative measure by conducting individualized voir dire does not establish that the district court's choice of curing any confusion constitutes an abuse of discretion. In short, we agree that the district court did not abuse its discretion in the manner in which it conducted voir dire.

C.    Evidentiary Issue

Sierra's defense at trial was based on his alleged lack of knowledge about the cocaine in his rental vehicle. At trial, TFA Newman testified that (1) Sierra had maps of the McAllen-Edinburg area, which, according to TFA Newman, is a popular drug trafficking area; (2) people like Sierra with no criminal histories are often sought to transport drugs; (3) the cocaine was covered with masking agents often used to avoid detection; and (4) Sierra had a boost phone, which, according to TFA Newman, is a type of prepaid cell phone often used by drug dealers because they are essentially untraceable.[4]

Sierra did not oppose any of this testimony at trial.[5] Thus, we review its admission for plain error only. See United States v. Espino-Rangel, 500 F.3d

---

[4] Deputy Womack also testified about the McAllen-Edinburg area and Special Agent Chad Scott reinforced the point about boost phones.

[5] Defense counsel did inform the district court that the TFA Newman was "getting very close to giving opinions here and he hasn't been qualified as an expert," but he never lodged a formal objection.

398, 399 (5th Cir. 2007); Fed. R. Evid. 103(d). To prove plain error, Sierra must satisfy three elements: (1) an error, (2) that is clear and obvious, and (3) that affects substantial rights. See United States v. Reyna, 358 F.3d 344, 350 (5th Cir. 2004). If Sierra meets these criteria, this court has discretion to correct the error and will do so if it seriously affects the "fairness, integrity, or public reputation of judicial proceedings." Id. "[E]ven if we were to find the existence of plain error, we could find it harmless if there is sufficient evidence, aside from any potentially impermissible testimony, from which the jury could find the Defendant[] guilty." Espino-Rangel, 500 F.3d at 400 (citing United States v. Guiterrez-Farias, 294 F.3d 657, 663-64 (5th Cir. 2002)).

Sierra argues that the aforementioned testimony constitutes expert testimony and that the district court abused its discretion by permitting it without first qualifying TFA Newman as an expert under Rule 701 of the Federal Rules of Evidence. That Rule provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" United States v. Sosa, 513 F.3d 194, 200 (5th Cir. 2008) (quoting Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendments). "[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life." Id. (quoting United States v. Garcia, 413 F.3d 201, 215 (2d Cir. 2005)). "[A]ny part of a witness's opinion that

rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701." Id. (citing Garcia, 413 F.3d at 215).

The district court did not commit reversible error by permitting TFA Newman's testimony without first requiring his qualification as an expert. Even assuming arguendo that the district court committed an error, the error did not affect Sierra's substantial rights. For an error to affect a defendant's substantial rights, "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734 (1993). "To meet this standard the proponent of the error must demonstrate a probability 'sufficient to undermine confidence in the outcome.'" United States v. Mares, 402 F.3d 511, 521 (5th Cir. 2005) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)). In addition to the fact that Sierra was found driving a rental car containing cocaine, his cell mate testified that Sierra stated that he (1) sells drugs, (2) "almost got away" on this particular occasion, and (3) specifically used rental cars to "look the least conspicuous." Also, according to the trial testimony, Sierra (1) was extremely nervous during the traffic stop, (2) gave inconsistent answers, (3) refused to explain why he had maps of the McAllen-Edinburgh area of Texas when it was not on his expressed itinerary, (4) smirked when asked about "coca," and (5) jumped when the officers began searching the bumper of the vehicle where the cocaine was found, prompting Deputy Womack to ask Sierra if anything was wrong. Finally, the mileage on the rental car was more consistent with a drive from McAllen as opposed to Houston, Texas, from where Sierra stated he was driving. Thus, there was more than sufficient evidence, even setting aside from TFA Newman's challenged testimony, from which a reasonable jury could have found Sierra guilty. Accordingly, Sierra has not shown that the district court's alleged error affected his substantial rights.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of the motion to suppress and the judgment of conviction.

AFFIRMED.