United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 16, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-30617

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL REYES GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before REAVLEY, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Manuel Reyes Gonzalez ("Gonzalez") appeals his conviction on one count of possession of cocaine with intent to distribute, arguing that the district court erred by (1) denying his motion to suppress evidence seized from his vehicle and (2) allowing the government to introduce evidence of his prior arrests and prior conviction for drug possession.  For the reasons given below, we AFFIRM the judgment of the district court.

*Background*

At 6:30 a.m. on December 19, 2001, Louisiana State Trooper Scott Wright ("Officer Wright") observed a vehicle driven by

Gonzalez riding the center line on I-20 eastbound in Bossier Parish. Officer Wright stopped the vehicle and asked Gonzalez for his driver's license and vehicle registration. Gonzalez produced a Texas photo I.D., explaining that he did not have his driver's license because he was getting it renewed. The valid vehicle registration had been issued six days earlier in the name of Blanca Gonzalez, whom Gonzalez identified as his wife.

As Officer Wright explained that he would issue a citation for improper lane use, he noted that Gonzalez appeared quite nervous. Specifically, Gonzalez avoided eye contact with Officer Wright, talked incessantly, and had shaking hands. Gonzalez stated that he was traveling from Weslaco, Texas. When asked where he was going, he hesitated and then said he was going to Pensacola, Florida to visit a sick relative. Officer Wright found this unusual because I-20 is several hundred miles away from the most direct route from Weslaco to Pensacola, which is I-10. When Officer Wright asked who the relative was, Gonzalez hesitated and then stated that it was his uncle. He hesitated again before giving his uncle's name. Gonzalez indicated that he planned to stay in Pensacola for about a week. Officer Wright found this unusual because it meant that Gonzalez would be away from his wife over the Christmas holiday.

Officer Wright returned to the patrol car. He checked Gonzalez's identity, driver's license status, and criminal history and began to prepare citations for improper lane usage and driving without a license. The check revealed that Gonzalez's driver's

2

license was suspended and that Gonzalez previously had been arrested "two or three times" for transporting narcotics.

Officer Wright instructed Gonzalez to step out of the car. He returned Gonzalez's identification and vehicle registration and presented Gonzalez with the two citations. Wright then asked Gonzalez if he had ever been arrested before. Gonzalez hesitated before saying he had been arrested once five to seven years before on a possession charge, a statement that was inconsistent with the information revealed by the check. Officer Wright told Gonzalez that illegal drugs were often transported along I-20 and asked Gonzalez if he had any drugs in his vehicle. Gonzalez denied having any drugs in the vehicle, and told Officer Wright that he could look in the car.

Officer Wright asked if Gonzalez would consent to a search and presented Gonzalez with a standard consent form, which Gonzalez read and signed. Officer Wright searched the interior of the car, noting that Gonzalez had no clothing, toiletries, or other personal items in the car. Another state trooper arrived with a narcotics dog named Lika. Lika was led around the car several times. Lika alerted to the presence of drugs.

The troopers ordered Gonzalez to drive to Louisiana State Patrol headquarters. At headquarters, officers removed the interior quarter-panels located above the back seat and found powder cocaine. Gonzalez was arrested and charged with possession with intent to distribute.

Prior to trial, Gonzalez moved to suppress the drug evidence seized from his vehicle alleging that it was the result of an unconstitutional search. After a hearing, the magistrate judge recommended that the motion be denied. After reviewing the record and Gonzalez's written objections the district court judge denied the motion to suppress.

At trial, the government proposed to introduce into evidence testimony by Officer Wright regarding Gonzalez's prior arrests for drug offenses and other evidence of Gonzalez's 1988 conviction for possession of marijuana. The government argued that the testimony regarding Gonzalez's prior arrests was intrinsic to the charged offense because he had given evasive answers about his criminal history during the stop. The government further argued that the evidence of the past conviction was relevant to establishing Gonzalez's intent. Over objections, the district court admitted both the testimony of Officer Wright and the evidence of Gonzalez's prior conviction. Gonzalez was convicted by a jury on the single count of possession with intent to distribute and sentenced to 151 months in prison.

*The Motion to Suppress*

When reviewing a district court's grant or denial of a motion to suppress evidence as obtained in violation of the Fourth Amendment, we review a district court's factual determinations for clear error and its ultimate Fourth Amendment conclusions <u>de novo</u>.

4

<u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996); <u>United States v. Arvizu</u>, 534 U.S. 266, 275 (2002).  We view the evidence introduced at a suppression hearing in the light most favorable to the prevailing party.  <u>United States v. Orozco</u>, 191 F.3d 578, 581 (5th Cir. 1999).

Gonzalez concedes that the initial stop was a valid traffic stop for improper lane use under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  However, he argues that Officer Wright exceeded the scope of the valid stop when he continued to question Gonzalez after he issued the citations.  See <u>United States v. Dortch</u>, 199 F.3d 193, 198-99 (5th Cir. 1999).  He also argues that because the questioning exceeded the scope of the stop, his consent to search was not valid.  He further argues that even if his consent to the search was valid, the movement of the car to police headquarters exceeded the scope of his consent.

Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts.  <u>United States v. Machuca-Barrera</u>, 261 F.3d 425, 434 (5th Cir. 2001); <u>United States v. Shabazz</u>, 993 F.2d 431, 436 (5th Cir. 1993).  We have recognized that mere "uneasy feelings" and inconsistent stories between a driver and a passenger do not constitute articulable facts that support a reasonable suspicion of drug trafficking.  See <u>United States v. Santiago</u>, 310 F.3d 336, 338-39 (5th Cir. 2002).

5

Several articulable facts support reasonable suspicion of drug activity in this case. Officer Wright testified that Gonzalez appeared very nervous, was hesitant in answering the most basic questions about his travel plans, lied about why he didn't have a driver's license, was 500 miles away from the road leading to his claimed destination, was on a road associated with drug trafficking, and had been arrested for drug trafficking in the past. These facts together gave rise to a reasonable articulable suspicion that Gonzalez was involved in drug trafficking.[1] To the extent that Officer Wright's questions about the purpose and itinerary of Gonzalez's trip were posed during the legitimate traffic stop, they were permissible. See Shabazz, 993 F.2d at 436 ("[A] police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself [not] a Fourth Amendment violation"); Machuca-Barrera, 261 F.3d at 432. Subsequently, because Officer Wright had formed a reasonable suspicion based on specific articulable facts, his continued detention of Gonzalez to

---

[1]This case is clearly distinguishable from Santiago. In Santiago, the officer explicitly testified that during the legitimate scope of the traffic stop, which included a look at Santiago's driver's license and auto registration, a computer records check, and issuance of a citation, he had no specific reason to believe that the defendant was transporting drugs, but that he had "uneasy feelings" about the situation. The officer in Santiago did not discover any specific lies told by the driver or passenger and testified that he merely thought that they might be "trying to conceal something" about the car or the children who were traveling with them. This court held that additional detention to ask questions about drug trafficking exceeded the scope of the traffic stop without reasonable suspicion.

ask questions regarding his criminal history and the possible presence of drugs in the vehicle did not violate the Fourth Amendment.

Because Officer Wright's questioning of Gonzalez did not violate the Fourth Amendment, that questioning cannot be said to have tainted his consent to search. There is nothing in the record to suggest any clear error in the district court's determination that Gonzalez's consent was voluntarily given as an independent act of free will. See United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993).

Finally, we need not reach the question of whether moving the vehicle to police headquarters exceeded the scope of consent, because the officers clearly had probable cause to move the vehicle in order to conduct a more complete search once Lika the narcotics dog gave a positive alert to the presence of narcotics in the area of the rear wheel well and undercarriage. See Dortch, 199 F.3d at 197-98.

*Prior Arrests and Prior Conviction*

We review evidentiary rulings for abuse of discretion. United States v. Phillips, 219 F.3d 404, 409 (5th Cir. 2000); United States v. Hernandez-Guevara, 162 F.3d 863, 869 (5th Cir. 1998). If we find an abuse of discretion, we must determine whether the error had a harmful effect on a substantial right of the defendant. Phillips, 219 F.3d at 409.

Gonzalez contends that the district court erred in admitting testimony by Officer Wright regarding Gonzalez's history of arrests for transporting narcotics. Evidence is admissible as intrinsic to the offense charged "if it was inextricably intertwined with the evidence regarding the charged offense or if it is necessary to complete the story of the crime of the trial." United States v. Morgan, 117 F.3d 849, 861 (5th Cir. 1997). The district court found that Officer Wright's knowledge of the prior arrests was intrinsic to the story of the crime in this case, because it gave rise to his continued questioning and allowed him to know that Gonzalez was lying in response to his questions. Gonzalez argues that the district court abused its discretion in allowing the testimony regarding Officer Wright's discovery of the prior arrests because it was not intrinsic to the offense charged and that the danger of undue prejudice outweighed any probative value the testimony might have had. The computer check and the results thereof clearly are part of the story of Officer Wright's discovery of the crime. However, because the court held a preliminary hearing on whether Officer Wright was justified in his continued questioning of Gonzalez, it is not clear that it was necessary for the government to establish the propriety of the continued questioning at trial. Although we are not convinced that the admission of this testimony is free from doubt in these circumstances, we cannot say that the district court abused its discretion in allowing Officer Wright to include in his narrative of events the fact that he knew Gonzalez

8

was not telling the truth based on the results of the computer check. Gonzalez's untruthfulness in answering the questions arguably was relevant to whether his denial of knowledge of the contraband in the vehicle was credible.

Gonzalez also argues that the district court erred in admitting evidence of his 1988 conviction for possession of marijuana with intent to distribute under Rule 404(b) of the Federal Rules of Evidence. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...." Fed. R. Evid. 404(b). When determining whether evidence is admissible under this rule, a court must determine first whether the evidence of the prior conviction was relevant to any issue other than the defendant's character and second, whether the probative value of the evidence was substantially outweighed by the risk of undue prejudice. United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)(en banc).

The district court found that, because Gonzalez's 1988 conviction involved the transportation of drugs in a hidden compartment of a car, it was relevant to Gonzalez's knowledge of the cocaine hidden in the car and intent to distribute the cocaine seized from his car. Gonzalez argues that the prior conviction was not relevant to knowledge and intent because of some factual

9

differences between the offenses. The differences he relies on are that in 1988, there were two people in the vehicle; Gonzalez was a passenger; the vehicle was stopped on a rural road rather than a highway; and some drugs were visible in the vehicle as well as being concealed in the wheel well in 1988 while all of the drugs in the instant offense were concealed in the wheel well. These differences do not affect whether the prior conviction is relevant to prove knowledge of the concealed drugs in this case. Because both the prior conviction and the current offense involved the concealment of drugs in hidden compartments, the district court did not abuse its discretion in finding that the 1988 conviction was relevant to the issues of knowledge and intent. See United States v. Saucedo-Munoz, 307 F.3d 344 (5th Cir. 2002).

Finally, Gonzalez argues that the danger of undue prejudice from the evidence substantially outweighs its probative value because of the factual differences and the age of the 1988 conviction. The age of a prior conviction weakens its probative value, but it is not a per se bar to admissibility. United States v. Hernandez-Guevara, 162 F.3d 863, 872-73 (5th Cir. 1998)(admission of an eighteen-year-old conviction not an abuse of discretion); United States v. Chavez, 119 F.3d 342 (5th Cir. 1997)(admission of fifteen-year-old conviction not an abuse of discretion). While the probative value of the 1988 conviction is weakened by its age, the district court did not abuse its discretion in determining that the

probative value of the evidence as to knowledge and intent outweighed any possible prejudicial effect.[2]

For the foregoing reasons, the judgment of the district court is                                                            AFFIRMED.

---

[2]We note that the district court properly instructed the jury that it was to consider the prior conviction only so far as it tended to prove knowledge or intent, which further mitigated any potential prejudicial effect.