United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 18, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10069
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

LASHONDA WILSON; CRAIG ALEXANDER;
CHRISTOPHER ALEXANDER

Defendants - Appellants

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 5:01-CR-60-2-C
_____

Before KING, Chief Judge, and REAVLEY and STEWART, Circuit
Judges.

PER CURIAM:[*]

Craig Alexander, Christopher Alexander, and LaShonda Wilson

were convicted of one count of conspiracy to possess with the

intent to distribute more than fifty grams of crack cocaine, in

violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii),

and two counts of possession of more than fifty grams of crack

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

cocaine with intent to distribute, in violation of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(A)(iii), and 18 U.S.C. § 2.  The

district court sentenced Craig Alexander and Christopher

Alexander to terms of life imprisonment and LaShonda Wilson to a

term of 235 months' imprisonment.  We affirm.

## I.   FOURTH AMENDMENT CHALLENGES

This appeal presents three challenges under the Fourth

Amendment that merit brief discussion.  The first involves a

warrant-based search of the residence of Christopher Alexander

("Christopher").  The next two challenges involve an incident at

the Greyhound bus station in Shreveport, Louisiana.

A.   The Search of Christopher's Residence

On January 23, 2001, the police conducted a warrant-based

search of Christopher's residence in Lubbock, Texas.  While the

police did not uncover illegal narcotics, they did find over

$32,000 in cash and records indicating drug activity.  The

warrant was issued by a municipal judge in Lubbock based on the

affidavit of Officer Dwayne Gerber ("Officer Gerber") of the

Lubbock Police Department, who was acting on information provided

by a confidential informant.

In challenging the denial of his motion to suppress evidence

seized from this search, Christopher contends that Officer

Gerber's affidavit cannot support a finding of probable cause.

Christopher makes much of the fact that the informant reported

that he had observed cocaine inside the residence within the

previous 72 hours and that cocaine was being trafficked and possessed at the residence, but that none was found when the search was conducted. Specifically, he asserts that because Officer Gerber did not observe the confidential informant enter Christopher's home or personally meet the informant, Officer Gerber displayed a reckless disregard for the truth in relying on the informant.

The district court held that there were sufficient facts alleged in the affidavit to establish probable cause, that the affidavit was executed in good faith by the agent, and that the warrant was lawful. We agree. The affidavit gave specific reasons supporting the confidential informant's credibility and described specific information supporting a reasonable probability that contraband would be found within the residence. The judge who issued the warrant therefore "had a substantial basis for finding probable cause," United States v. Cavazos, 288 F.3d 706, 709 (5th Cir. 2002), and the district court correctly denied Christopher's motion to suppress. In any event, the warrant at issue here is far more than a "bare bones" affidavit, and the officers were entitled to rely in good faith on its validity in conducting the search. See United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1996).

B. The Shreveport Bus Station Incident

The next two Fourth Amendment challenges arise out of the same incident. In early February 2001, Craig Alexander ("Craig")

3

and LaShonda Wilson, along with Latricia Perry, traveled by bus en route to Georgia when the bus made a scheduled stop at a Greyhound bus station in Shreveport, Louisiana. Caddo Parish Sheriff's Deputies Danny Williams ("Officer Williams") and James McLamb ("Officer McLamb") performed a drug inspection inside the bus in response to a positive canine alert to the outside of the bus.

Inside the bus, during the drug interdiction investigation, Officer Williams noticed a suspicious bulge in Craig's pants. Officer Williams began to question Craig, who reported that his name was "Calvin Reed" and that he was traveling alone. Officer Williams asked Craig to speak with him in the luggage room at the bus station, and Craig agreed to follow him. Once in the luggage room, Officer Williams asked Craig for his bus ticket and photo identification card. Craig informed Officer Williams that he did not have a driver's license. However, when he pulled out his bus ticket, an Alabama driver's license fell out of Craig's pocket. While the bus ticket was issued to "Calvin Reed," the license was under the name "Adrian Lavar Smith." Although Craig insisted that he was alone, Officer Williams recalled observing Craig walking alongside two women.

Officer Williams then returned to the bus, soon encountering Wilson. He asked to see her bus ticket. Wilson's bus ticket was also under the name "Reed." Officer Williams thereafter asked Wilson to exit the bus. Wilson consented to a conversation with

4

Officer Williams, and indeed, while exiting the bus, she inquired as to the location of Craig, to whom she referred as her brother "Calvin." Officer Williams then informed her that Craig was in the back talking with another deputy and that they could go to the luggage area, where he was being questioned. Wilson and Officer Williams differ as to what exactly happened next. Wilson recalls that when she turned to go the other way, Officer Williams grabbed her arm and directed her toward Craig's location. Contrarily, Officer Williams testified that he did not touch Wilson until she later lifted up her shirt to reveal cocaine.

Nevertheless, once they reached the luggage area, Officer Williams read Wilson her <u>Miranda</u> rights, but informed her that she was not under arrest. He then asked whether she had narcotics on her person. She responded in the affirmative and pointed to her stomach. Officer Williams then lifted up Wilson's shirt and found crack cocaine partially concealed underneath her waistband. Craig, Perry, and Wilson were arrested immediately thereafter.

Both Craig and Wilson challenge the district court's denial of their motions to suppress evidence seized during the incident at the Shreveport bus station.[2] When reviewing a district

---

[2] Christopher also claims that the district court erred in denying his motion to suppress evidence seized at the Shreveport bus station based on the allegedly unreasonable seizures of Perry, Craig, and Wilson. Significantly, Christopher was not

court's denial of a motion to suppress evidence obtained by an alleged violation of the Fourth Amendment, this court reviews the district court's factual determinations for clear error and its ultimate Fourth Amendment conclusions de novo. E.g., United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003).

    1.   Wilson's Motion to Suppress

Wilson asserts two discrete Fourth Amendment claims on appeal. First, she claims that Officer Williams's touching of her constituted an unreasonable seizure. Relying on the Supreme Court's decision in California v. Hodari D., 499 U.S. 621 (1991), Wilson argues that by grabbing her, Williams prohibited her attempt to walk away, restricted her freedom to leave, and thereby unreasonably seized her. She contends that under these circumstances, a reasonable person would not feel free to leave. Second, she claims that her rights were violated when Officer Williams lifted up her shirt and searched her person without obtaining her consent.

---

among those allegedly seized at the Shreveport bus station. The Supreme Court has repeatedly made clear that "rights such as those conferred by the Fourth Amendment are personal in nature, and cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched." E.g., Minnesota v. Carter, 525 U.S. 83, 101 (1998). Because Christopher did not have a reasonable expectation of privacy at the Shreveport bus station, he cannot now argue that evidence seized as a result of an alleged violation of a co-defendant's Fourth Amendment rights should be suppressed.

In denying Wilson's motion to suppress, the district court determined that the officers used lawful and proper interdiction techniques, and specifically, that the officers' encounters with Craig and Wilson were consensual and that "they were not in custody by the officers." We read these determinations as a conclusion that no seizure of Wilson occurred until she was formally arrested.

Wilson's basic contention – that, based on Hodari D., when she was grabbed by Officer Williams and steered in the direction of the luggage room, a seizure occurred – overlooks several key teachings of that case. While Hodari D. does state that an arrest can be effectuated by mere grasping, id. at 624, Hodari D. further reaffirms that a seizure under the Fourth Amendment "readily bears the meaning of laying the hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," id. at 626 (emphasis added), and that a seizure has traditionally required a "taking [of] possession," id. at 624.

While Wilson asserts that Officer Williams's grabbing of her constitutes a seizure, the district court implicitly did not credit her assertion that her freedom of movement was restrained. Apart from Officer Williams' grabbing of her (crediting arguendo her version of the touching at issue here, rather than Officer Williams' version) incident to steering her in the direction she

7

had indicated she wanted to go, there is no other indication in the record that she was not free to move in any other direction she might choose. In other words, the record does not indicate that she was ever under Officer Williams's control, and we read the district court's findings as a conclusion to that effect. See United States v. Holloway, 962 F.2d 451, 456-57 (5th Cir. 1992) (applying the Hodari D. analysis and finding that a defendant was not seized until his movement was restrained, "meaning under the officers' control") (emphasis added). On this record, that conclusion is not erroneous.

Further, Wilson's invocation of the Mendenhall test, i.e., that "a reasonable person would have believed that he was not free to leave," United States v. Mendenhall, 446 U.S. 544, 554 (1980), is problematic. The Hodari D. Court plainly described the Mendenhall test as a necessary, but not sufficient condition to demonstrate a seizure. 499 U.S. at 628. Wilson's failure to present additional evidence of actual restraint further vitiates her claim.

Wilson also claims that her Fourth Amendment rights were violated when Officer Williams failed to inform Wilson of her right to refuse the search of her person. This argument is without merit. The Supreme Court has rejected the proposition that law enforcement officers must always inform citizens of their right to refuse when seeking permission to conduct a

8

consent search without a warrant.  United States v. Drayton, 536 U.S. 194, 207 (2002).  Reviewing the totality of the circumstances, the denial of her motion to suppress was warranted.  Significantly, Wilson does not controvert the facts that Officer Williams read Wilson her Miranda rights, informed her that she was not under arrest, and simply asked whether she had narcotics on her person.  By responding in the affirmative and pointing exactly where the narcotics could be found on her body, Wilson implicitly granted Officer Williams permission to search.  Thus, no Fourth Amendment violation occurred.

   2.   Craig's Motion to Suppress

   Craig claims that the district court erred in denying his motion to suppress because his arrest violated his rights under the Fourth Amendment.  Specifically, he asserts that Officer Williams lacked probable cause to arrest him.

   "Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed."  E.g., United States v. Carrillo-Morales, 27 F.3d 1054, 1062 (5th Cir. 1994).  Given the facts and circumstances before Officer Williams, probable cause to arrest existed.  First, Officer Williams noticed a suspicious bulge in Craig's pants, which, based on his experience in drug interdiction, typically indicated concealment of either illegal

9

narcotics or weapons.  Officer Williams also recognized that Craig was traveling under an alias.  These circumstances, combined with Wilson's request for her brother "Calvin," the fact that both Wilson and Craig possessed bus tickets issued to persons with the last name "Reed," and the fact that drugs were found on Wilson's person, support a finding that Officer Williams had probable cause to believe that an offense had been or was being committed by Craig.  Thus, it was not error to deny Craig's motion to suppress.

## II. SUFFICIENCY OF THE EVIDENCE CHALLENGES

Christopher and Craig challenge the sufficiency of the evidence to support their convictions under Count Two of the indictment, and Craig challenges the sufficiency of the evidence to support his conviction under Counts One and Three of the indictment.  In reviewing a claim of insufficient evidence to support a conviction, this court determines "whether a rational trier of fact could have found that the evidence proved the essential elements of the crime beyond reasonable doubt."  E.g., United States v. Gallardo-Trapero, 185 F.3d 307, 314 (5th Cir. 1999).  The trial evidence is viewed in the light most favorable to the government and with all reasonable inferences made in support of the jury's verdict.  Id.

A.   Christopher and Craig's Count Two Convictions

10

Count Two charged possession of more than fifty grams of crack cocaine with intent to distribute on or about October 19, 2000. The cocaine at issue in Count Two was found in a backpack that Wilson abandoned at the Lubbock airport on October 19, 2000. Christopher and Craig assert that no evidence exists to prove that they actually possessed the cocaine. They emphasize the fact that the baggage personnel could not identify Wilson as the person who placed the backpack on the conveyor for inspection. Christopher also argues that he was neither at the airport nor in the car at the time of the incident at issue.

The essential elements of a violation of § 841(a) include: (1) knowledge, (2) possession, and (3) intent to distribute the controlled substance. E.g., United States v. Delgado, 256 F.3d 264, 274 (5th Cir. 2001). If, as here, a defendant is charged with aiding and abetting in violation of 18 U.S.C. § 2, proof of actual possession is not necessary. Id. The government need only prove that the defendant became "associated with, participated in, and in some way acted to further the possession and distribution of the drugs." Id.

The evidentiary record indicates that Craig and Christopher associated with, participated in, and acted to further the possession and distribution of crack cocaine, namely by directing Wilson to transport to the airport crack cocaine concealed inside a backpack. Contrary to their contentions, evidence exists

11

linking Wilson to the backpack containing the cocaine, as the record indicates that not only were Wilson's fingerprints located on the backpack, but also that a tag bearing her name was found inside the backpack. More importantly, there is evidence linking Craig and Christopher to the confiscated backpack, as Craig accompanied Wilson to the airport the day the cocaine was seized, an occurrence that Craig subsequently reported to Christopher. Their participation in this incident provides circumstantial evidence of their intent to violate § 841(a)(1) and their active role in so doing. Because proof of actual possession of the crack cocaine is not required under aiding and abetting liability, sufficient evidence existed to support both Craig and Christopher's convictions for Count Two.

B. Craig's Count One and Three Convictions

On appeal, Craig also challenges the sufficiency of the evidence to support his conspiracy conviction on Count One, as well as his conviction on Count Three, the facts of which stem from the seizure of crack cocaine from Perry and Wilson at the Shreveport bus station on February 4, 2001. Craig argues that there is no credible evidence linking him to the drugs found on Perry and Wilson or suggesting that he knowingly participated in a cocaine conspiracy.

As the government points out, the testimony of Perry and Rhodesia Harris described Craig's crack distribution activities

12

using those women to sell and transport the drug.  Their testimony was sufficient to support Craig's conspiracy conviction and was corroborated by other evidence in the record.

Count Three charged Craig with aiding and abetting the possession of more than fifty grams of crack cocaine with intent to distribute on or about February 1-4, 2001.  The crack cocaine at issue was confiscated from Wilson and Perry at the Shreveport bus station.  Evidence exists linking Craig to the confiscated crack.  At trial, Perry testified that Craig: (1) drove Wilson and Perry from Lubbock to Amarillo, where they boarded the bus to Shreveport; (2) stayed at the same Amarillo hotel as Wilson, Perry, and Christopher, where the drug conspiracy was discussed prior to leaving for the bus station; (3) purchased the bus tickets for Perry, Wilson, and himself, to take the trip to Shreveport; and (4) came on the trip with Perry and Wilson to ensure that Wilson was successful in trafficking the drugs.[3]

Once again, under aiding and abetting liability, the government need not demonstrate that Craig actually possessed the

---

[3]  Craig claims that because his conviction rested on the testimony of Perry, an accomplice that received immunity, his acquittal is required under the court's jury instruction to "never convict any defendant upon the unsupported testimony of such a witness."  However, this argument does not reflect the entire context of the instruction; the court instructed the jury to never convict based on such testimony "unless you believe that testimony beyond reasonable doubt."  Record on Appeal, vol. 7, at 630, ln. 15-17.  More importantly, Craig fails to establish that Perry's testimony was "insubstantial on its face."  E.g., United States v. Posada-Rios, 158 F.3d 832, 861 (5th Cir. 1998).

13

crack cocaine in question.  By presenting evidence of his actions leading up to the confiscation of the crack cocaine and the Shreveport bus station, the government satisfied its burden of proof by establishing that Craig associated with, participated in, and in some way acted to further a violation of § 841(a)(1). Craig's conviction for Count Three should also be affirmed.

### III. OTHER MISCELLANEOUS CHALLENGES

Craig and Christopher make other challenges to their convictions.  First, they argue that the district court improperly denied their request to delay their trial so that they could change from jail-issued clothing to their own attire. Because there was no jail insignia or any jail writings on the white t-shirt or the khaki pants they wore at trial, it cannot be said that the clothing at issue "improperly project[ed] an implication of guilt."  United States v. Dawson, 563 F.2d 149, 151 (5th Cir. 1977).  As a result, this claim fails.

Next, they contend that the district court improperly denied their request for a mistrial because, during a lunch break, a handful of jurors observed them ascending the court house steps in handcuffs and shackles.  However, "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." United States v. Diecidue, 603 F.2d 535, 549 (5th Cir. 1979).

14

Because Craig and Christopher have not sufficiently demonstrated prejudice, this claim fails as well.

Finally, Christopher claims that the district court's removal of the only African-American from the jury pool constituted manifest error. He argues that for reasons discussed in Batson v. Kentucky, 476 U.S. 79 (1986), the Defendants, who were all African-American, should have had at least one person of the their race serving on the jury. To the contrary, Batson holds that jury members must be selected on a race-neutral basis, and that defendants do not have the right to have their case tried before a jury comprised of members of their own race. Id. at 85-86. Thus, there was no manifest error in the district court's sua sponte removal of the juror.

## IV. CONCLUSION

Because none of the issues presented rises to the level of reversible error, the respective judgments of conviction and sentences of the Defendants are AFFIRMED.