**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 13, 2009

Charles R. Fulbruge III
Clerk

No. 08-30561

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

CHARLESTON E. JACKSON

Defendant-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CR-263

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

A grand jury charged Defendant-Appellee Charleston Jackson with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The government appeals the district court's order suppressing evidence based on the court's determination that law enforcement officers lacked reasonable suspicion to justify their investigatory stop of Jackson. Finding no reversible error, we affirm the trial court's suppression of the evidence obtained in that stop and in the subsequent search of Jackson's residence.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

On June 18, 2007, two confidential informants independently provided information to the Baton Rouge City Police Department that Jackson had recently returned from Houston with a multi-kilo quantity of cocaine. Both informants had been reliable in the past and had offered information that resulted in felony arrests. According to the informants, Jackson (1) stored the cocaine at his residence on Belcaro Drive in Baton Rouge, (2) used rental cars to transport the cocaine, (3) used a cell-phone, including its text-messaging feature, to coordinate his trafficking activities, and (4) routinely transported cocaine — in amounts that would be sold the day of the transporting — from his residence to a residence in the Gus Young area of Baton Rouge ("Gus Young").[1] Baton Rouge Detective Samuel White then contacted ATF Agent Christian Ladner to request the ATF's assistance in an investigation. The officers determined that Jackson had one prior felony conviction for a cocaine-related offense committed in 1992. That same day, the officers began to conduct surveillance of Jackson's residence and of locations in Gus Young.

On the morning of the third day of surveillance, June 20, the officers watched Jackson leave his house in a vehicle and travel west, a route consistent with heading to Gus Young (but also to an infinite number of other areas). The officers proceeded to run the license plate of Jackson's vehicle through a computerized system, in response to which they received word via radio that the

---

[1] The two agents who testified at the suppression hearing offered contradictory accounts of the substance of the informants' tips. According to Detective Samuel White, the only witness who actually had contact with the informants, the tips revealed that Jackson transported cocaine *to* a residence in Gus Young. ATF Agent Christian Ladner, who only received word of the tip from Detective White, testified that the informants said Jackson would make stops *en route to* Gus Young. The district court viewed Detective White's testimony as more accurate. We defer to that factual determination. *See United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003) (reviewing factual findings for clear error).

vehicle was likely a rental car. Jackson made two brief stops.[2] One of the stops was at a business, Mix and Match Body Shop, the owner of which testified that Jackson had stopped by to inquire about a part that he had ordered for his vehicle's front bumper. It is unclear whether the second stop was at a business or a residence. The officers did not witness Jackson engage in any criminal activity.

Jackson eventually turned onto Acadian Thruway, a maneuver *inconsistent* with heading toward Gus Young. Hypothesizing that he had altered his course because he knew he was being followed, the officers stopped Jackson. They asked for and received Jackson's consent to search the vehicle.

The officers uncovered seven grams of marijuana, a rental car agreement for the vehicle in the name of a third party, numerous receipts from the Houston area, and two bank deposit receipts totaling $8,500. Jackson also consented to a search of his cellular phone, which contained a text message — "Put your personal info in the house, not the truck. I don't mind helping. I want to help." — that Agent Ladner inferred was related to drug trafficking activities.

Based on the evidence they uncovered in the vehicle, the officers arrested Jackson and obtained a search warrant for his home. The search of the home yielded, *inter alia*, a loaded .40 caliber handgun. A grand jury then charged Jackson with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

Jackson filed a motion to suppress, contending that the officers lacked reasonable suspicion to conduct their investigatory stop of his vehicle. The district court granted the motion and suppressed the fruits of the search of both

---

[2] Again, the district court relied on Detective White's testimony rather than that of Agent Ladner, who recalled that there were three or four stops. And, again we defer to the district court's factual finding. As for the duration of each stop, the officers' testimony establishes only that the stops each lasted at least one minute and at most ten minutes.

the vehicle and Jackson's house, including the firearm. The government timely filed a notice of appeal.

## II. ANALYSIS

### A. Standard of Review

"When reviewing a district court's grant or denial of a motion to suppress evidence as obtained in violation of the Fourth Amendment, we review a district court's factual determinations for clear error and its ultimate Fourth Amendment conclusions *de novo*."[3] We view evidence introduced at a suppression hearing in the light most favorable to the prevailing party, in this case Jackson.[4]

### B. Claimed Suppression Error

#### 1. Applicable Law: Reasonable Suspicion

"An investigative vehicle stop is permissible under *Terry* only when the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot."[5] Although "reasonable suspicion" need not rise to the level of probable cause, a "mere hunch" is insufficient.[6] The stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."[7] The circumstances, however, "need not rule

---

[3] *Gonzalez*, 328 F.3d at 758.

[4] *Id.*; *see United States v. Troop*, 514 F.3d 405, 409 (5th Cir. 2008); *United States v. Gonzales*, 79 F.3d 413, 419 (5th Cir. 1996) (per curiam) (viewing evidence in the light most favorable to the prevailing party *unless* "such a view is either not consistent with the district court's findings or is clearly erroneous considering the evidence as a whole").

[5] *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008); *see Terry v. Ohio*, 392 U.S. 1 (1968).

[6] *Zavala*, 541 F.3d at 574.

[7] *United States v. Cortez*, 449 U.S. 411, 417 (1981).

out the possibility of innocent conduct."[8] An officer's reasonable suspicion must be based on the "totality of circumstances confronting her, including all information available at the time she decided to stop [the defendant]."[9] "As a corollary . . . of the rule that the police may rely on the totality of facts available to them . . . , they also may not disregard facts tending to dissipate" reasonable suspicion.[10]

"Reasonable suspicion, however, does not have to be based on a personal observation. It can be based on information provided by a confidential informant, if the information possesses an 'indicia of reliability.'"[11] In turn, whether information has indicia of reliability depends on, *inter alia*, "[1] the credibility and reliability of the informant, [2] the specificity of the information contained in the tip or report, [3] the extent to which the information in the tip or report can be verified by officers in the field, and [4] whether the tip or report concerns active or recent activity, or has instead gone stale."[12] No single factor is dispositive and "'[a] deficiency in one may be compensated for, in determining

---

[8] *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

[9] *United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005) (per curiam).

[10] *See Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (discussing this corollary in the equally applicable context of probable cause).

[11] *United States v. Roch*, 5 F.3d 894, 898 (5th Cir. 1993).

[12] *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007) (citation omitted). We are not as skeptical of *known*, *confidential*, informants as we are of *unknown*, *viz.*, *anonymous*, informants. *See, e.g.*, *United States v. Casper*, 536 F.3d 409, 414 (5th Cir. 2008) ("Where the tip is anonymous, the credibility and reliability of the informant cannot be determined, and the government must establish reasonable suspicion based on some or all of the other factors."). The Supreme Court views anonymous informants with "strong distrust"; a known informant is different because her "'reputation can be assessed'" and she may be "'held responsible'" if her information is fabricated. *Martinez*, 486 F.3d at 862–63 (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).

the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'"[13]

## 2.    The Officers Lacked Reasonable Suspicion

The government urges first that together the two informants' tips were sufficiently reliable to justify reasonable suspicion, *viz.*, the consistency of the independent tips is all that reasonable suspicion demands.  Second, the government contends that, even though further substantiation was unnecessary, the officers' investigation and surveillance of Jackson prior to his detention supplies corroboration of the tips and supports reasonable suspicion.  When we view the evidence from the suppression hearing in a light most favorable to Jackson, we cannot agree with the government.

We begin by rejecting the government's two-part analytical framework. Because we must determine reasonable suspicion based on the totality of the circumstances *as of the time that the police decided to initiate their investigatory detention*, we cannot assess the value of the two informants' tips in a vacuum. Instead, we must consider the information supplied by the informants together with the fruits, or lack thereof, of the officers' surveillance.[14]  Given that this three-day effort only undermined the informants' information, we hold that even if their tips had indicia of reliability,[15] by the time the officers detained Jackson,

---

[13] *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987) (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).

[14]  *See Bigford*, 834 F.2d at 1218.

[15] The informants' tips *may* have had indicia of reliability when Detective White received them:  (1) In the past, the informants had been reliable; (2) the tips were somewhat specific, e.g., who (Jackson), what (multiple kilos of cocaine recently transported from Houston), where (stored in Jackson's home and routinely transported in rental cars to a Gus Young residence); (3) the tips were capable of being verified; and (4) Jackson had recently returned from Houston.  *See Martinez*, 486 F.3d at 861 (setting forth these four factors); *see also United States v. Rojas Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) ("There is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible."); *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (suggesting

the facts of the surveillance had nullified the tips' reliability. After two days of "loose" surveillance, i.e., watching Jackson's residence and some locations in Gus Young, and one day of active surveillance, i.e., following Jackson as he drove around town, all that the officers observed still would not support a suspicion of criminal activity. At most, it merely confirmed that Jackson was the driver of a likely rental car and that on June 20, he (1) drove west, *viz.*, in the general direction of Gus Young (also in the direction of Texas, California, or any other westerly destination), (2) made two stops, one of which was at a body shop where he may have inquired about the status of a car-part order,[16] and then (3) made a turn *inconsistent with the informants' tips*. As the district court said, in three days of surveillance, "[b]asically the officers merely identified the Defendant and the fact that he was driving a rental car in a westerly direction." The informants' "tip" that Jackson routinely made drop-offs in Gus Young was not only uncorroborated by the surveillance; it was affirmatively contradicted by Jackson's actual route and his benign intermediate stops. The surveillance evidence falls short of the minimum level required to constitute reasonable suspicion, and only serves to deflate the informant-provided tips, which otherwise might have had the requisite indicia of reliability. Viewing the

that two "reciprocally corroborative" tips were "enough to support a finding of probable cause," although, in that case, there was additional corroboration provided by a police report).

[16] The government, relying on the officers' testimony, contends that the two stops were indicia of drug activity. Although we give weight to the officers' expertise, *see e.g.*, *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003) ("We traditionally give due deference to the experience of officers . . . in identifying a number of factors that, although insufficient by themselves to suggest illegal activity, taken together are indicia of certain types of illicit acts."), on the facts of this case, the two stops do not offer any significant support in favor of reasonable suspicion. After all, the evidence of the stops is double-edged: Regardless whether brief stops are generally indicative of drug activity, in this case, the stops belie the informants' story that Jackson routinely delivered to a residence in Gus Young, not to intermediate destinations.

evidence in a light most favorable to Jackson,[17] we affirm the district court's order of suppression.

We continue briefly to address the government's contention — with which we disagree — that our ruling today is inconsistent with our precedent. Specifically, this is not a case like *United States v. Holloway*, in which the combination of several factors — in addition to the consistency of multiple tips from independent, confidential informants — rose to the level of reasonable suspicion (and no evidence contradicted the informants' tips).[18] In that case, an informant who had been reliable in the past provided detailed information about a defendant's drug trafficking activities, including the fact that the informant had personally observed the defendant sell cocaine within the previous thirty minutes.[19] Further, an officer testified that other confidential informants had provided additional information that the defendant was a drug dealer.[20] The officer also personally knew the defendant from the street and knew him to be a drug dealer.[21] And, the officer confirmed that the defendant had recently completed a term of imprisonment for selling narcotics.[22] Based on the combination of all these factors, receipt of the informant's tip prompted the

---

[17] *See United States v. Nichols*, 142 F.3d 857, 866 (5th Cir. 1998) ("The totality of the circumstances presented by the factors in this case becomes even more convincing in light of our standard of review: we must view the evidence presented at the hearing on the motion to suppress in the light most favorable to the prevailing party — in this case, [Jackson].").

[18] *United States v. Holloway*, 962 F.2d 451, 459–60 (5th Cir. 1992).

[19] *Id.* at 453, 460. The confidential informant also told police (1) exactly where the defendant could be found, (2) that he usually stored crack cocaine in his underwear, and (3) that he sold the cocaine in a specific neighborhood, using a particular vehicle that could be found in a particular place. *Id.*

[20] *Id.* at 453.

[21] *Id.*

[22] *Id.*

police to initiate an investigatory detention of the defendant immediately.[23] Concluding that the officers had reasonable suspicion, we said: "In short, '[a]ny one of these factors is not by itself proof of any illegal conduct . . . [b]ut we think taken together they amount to reasonable suspicion.'"[24]

The instant case is similar to *Holloway* only in that the existence of one informant's tip was corroborated by a tip from another informant. Beyond that, the cases are readily distinguishable: (1) The informants' tips about Jackson are non-specific compared to those against Holloway, *e.g.,* neither informant had seen Jackson sell drugs in a particular place on the day of his detention; (2) the officers did not know Jackson to be a drug dealer; (3) he had no recent criminal record;[25] and, most crucially, (4) not only did surveillance of Jackson not corroborate the informants' tips, it affirmatively conflicted with them.

Neither does our decision today conflict with our holding in *United States v. Fields*.[26] In that case, a defendant challenged the affidavit on which a search warrant was granted, asserting that it did not provide probable cause.[27] The defendant urged specifically that "the affidavit [was] based on information provided by confidential informants, and did not establish the credibility of those

---

[23] *Id.* at 455, 458–59.

[24] *Id.* at 460 (quoting *United States v. Sokolow*, 490 U.S. 1, 9 (1989)).

[25] Agent Ladner recognized that Jackson has maintained a clean criminal record since his conviction for a 1992 drug offense. *See United States v. San Martin*, 505 F.2d 918, 922 (5th Cir. 1974) (emphasizing that some convictions are "so remote as to be lacking in evidentiary value" (citation omitted)). *But see Kohler v. Englade*, 470 F.3d 1104, 1111 (5th Cir. 2006) (stating that "prior arrests and convictions can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover" (citation omitted)).

[26] *United States v. Fields*, 72 F.3d 1200 (5th Cir. 1996).

[27] *Id.* at 1213–14.

informants."[28]    We noted that multiple confidential informants had given independent information to law enforcement and that each one's information corroborated that of the other.[29]    More importantly, at least two other factors were at play in our rejection of Fields's argument:  (1) "[A] police investigation corroborated some of the evidence provided by the informants," and (2) "[t]he confidential informants also implicated themselves in illegal drug activities and made admissions against penal interest."[30]    In addition to *Fields* involving a warrant and the probable-cause standard, our *Fields* opinion does not detail the extent to which the police investigation corroborated the informants' tips.  We do know, however, that in the instant case the investigation did just the opposite, calling the tips into question.  Neither is there any indication that the informants in this case offered any information against their own penal interest as they had in *Fields*.  Therefore, *Fields* does not control the instant case.

## III.  CONCLUSION

We AFFIRM the district court's order granting suppression of the firearm based on law enforcement's lack of reasonable suspicion to stop Jackson.[31]

---

[28] *Id.* at 1214.

[29] *Id.*

[30] *Id.*

[31] Jackson's post-detention consent to the search of his vehicle is irrelevant to our holding.  We need not determine the effect, if any, of Jackson's consent in the instant case, because, on appeal, the government makes no argument that Jackson's consent removed the taint of the illegal stop. *See United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("[T]he failure to raise an issue on appeal constitutes waiver of that argument.").

Neither does the Supreme Court's recent decision in *Arizona v. Gant*, which addresses vehicle searches incident to *lawful* arrests, have any effect on our analysis. *See Arizona v. Gant*, --- S. Ct. ---, 2009 WL 1045962, at *11 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.").