# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30748

United States Court of Appeals
Fifth Circuit

**FILED**
September 22, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellant,

versus

TOSH TOUSSAINT,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, SMITH, and COSTA, Circuit Judges.[*]

JERRY E. SMITH, Circuit Judge:

The United States appeals an order suppressing evidence seized in a traffic stop. Although the government maintained that the exigent-circumstances exception to the Fourth Amendment's warrant requirement validated the stop, the district court held that the exigency had dissipated by the time the officers made the stop. We reverse and remand.

---

[*] Carolyn Dineen King, Circuit Judge, concurs in the judgment only.

No. 15-30748

I.

By wiretap, an FBI agent heard Robert Williams, the suspected leader of the "Harvey Hustlers," a drug-trafficking organization, give permission to an associate to kill a person identified only as "Tye" or "Todd," who was said to be in the Kennedy Heights neighborhood of Avondale, Louisiana, driving around in a silver Infiniti coupe.  The agent immediately got in touch with Detective William Roniger of the Jefferson Parish Sheriff's Office, who was a member of the task force investigating the Harvey Hustlers.  Roniger contacted the sheriff's division that had responsibility for that area of Avondale and met several of its officers, including Deputy Jean Cadet, at a gas station.  There they discussed how to find the threatened individual and how to keep themselves safe in a potentially lethal situation.

Roniger and the other officers proceeded to Kennedy Heights and searched for silver Infinitis.  As they were leaving the area, they encountered one,[1] and Cadet proceeded to "pace" it.[2]  Cadet concluded the car was going over 35 miles per hour in a 20-mile zone and pulled it over.

Tosh Toussaint was the occupant.  Cadet told him to exit the vehicle holding his license, registration, and insurance information, but Toussaint got out without those items and quickly fled on foot.  Roniger chased him down, arrested him and gave *Miranda* warnings, and searched him incident to arrest, finding a 9mm pistol and a bag with rocks of crack cocaine.  Toussaint tried to flee and was caught again.  By that time, about forty-five minutes had elapsed

---

[1] The officers saw several silver Infinitis, all parked and unoccupied, before encountering the one they eventually pulled over.

[2] "Pacing" is a process by which a police officer attempts to match the speed of a vehicle the officer suspects of speeding; if the officer has to increase his or her speed above the speed limit, the vehicle is pulled over.  We upheld the denial of suppression of evidence found after a stop that resulted from pacing in, e.g., *United States v. Castro*, 166 F.3d 728, 731, 733 (5th Cir. 1999) (en banc) (per curiam).

2

No. 15-30748

between the initial threat overheard on wiretap and the stop of Toussaint's car. They brought Toussaint to the sheriff's investigations bureau and interviewed him; only then did they inform him of the potential threat on his life.[3]

## II.

The government charged Toussaint with three crimes relating to the items recovered in the search incident to arrest.[4] Toussaint moved to suppress the fruits of the traffic stop (the drugs and the gun), as well as the statements he made to police once they brought him to the investigations bureau. The government contested the motion on two grounds: (1) that the stop was legal under the exigent-circumstances exception because of the threat on Toussaint's life, and (2) that the speeding violation provided the officers with enough reasonable suspicion to make the stop.

The district court granted the motion to suppress on both grounds. *United States v. Toussaint*, 117 F. Supp. 3d 822 (E.D. La. 2015). It found exigent circumstances when the call was first intercepted but none when the officers encountered Toussaint forty-five minutes later. Additionally, it found that Roniger and his fellow officers' response to the threat was unreasonable, criticizing their lack of urgency and questioning whether they actually believed Toussaint was in need of emergency help.[5]

---

[3] When the officers pulled Toussaint over, they did not know for certain that he was the person who had been threatened. Only after he was arrested did he give Roniger his name, and it was then that Roniger confirmed that they had arrested "Tye"/"Todd."

[4] Possession with intent to distribute a quantity of a mixture or a substance containing a detectable amount of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

[5] The district court found that "there was no objectively reasonable basis for them to find that Toussaint was speeding." *Toussaint*, 117 F. Supp. 3d at 849 n.288. The government does not appeal that finding.

3

No. 15-30748

III.

A.

A ruling on a motion to suppress is reviewed *de novo*, though the factual findings made en route to that decision are reviewed for clear error. *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003) (citations omitted). This evidence is viewed in the light most favorable to the prevailing party—here, Toussaint. *Id.* Generally, a district court's determination of the existence *vel non* of exigent circumstances is a factual finding examined for clear error. *See, e.g., United States v. Troop*, 514 F.3d 405, 409 (5th Cir. 2009). But when influenced by an incorrect view of the law or an incorrect application of the correct legal test, a factual determination is reviewed *de novo*. *United States v. Mask*, 330 F.3d 330, 335 (5th Cir. 2003). Because the court did operate under just such an errant influence, we examine this entire matter *de novo*.

To decide whether the court erred in suppressing the evidence, we confront the *res nova* issue of whether officers can justify any stop of a vehicle (as distinguished from the search of a home) under the exigent-circumstances exception. We then examine whether that exception can justify this particular stop. Answering both questions in the affirmative, we reverse the order of suppression.

B.

The Fourth Amendment prohibits only searches that are unreasonable. Although "searches and seizures inside a home without a warrant are presumptively unreasonable,"[6] officers can respond without a warrant where exigent circumstances justify it.[7] One recognized exigent circumstance is "the

---

[6] *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)).

[7] *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978).

4

need to assist persons who are seriously injured or threatened with such injury." *Stuart*, 547 U.S. at 403. That is the "emergency aid" exception to the warrant requirement. Under *Stuart* and its progeny, officers can enter areas to help persons even though they could not otherwise be legally present without a warrant. *Id.* In this regard, the police serve a "community caretaking function[ ]" to ensure the safety of citizens.[8]

The vast majority of these cases address warrantless entries into homes.[9] No federal court of appeals has yet approved (nor has any rejected) the extension of this doctrine to a vehicular stop.[10] But there is no logical difficulty with extending the exception to those particular situations. Federal courts have decided similarly in cases dealing with vehicles that had already stopped.[11] Additionally, there is little reason to think that officers should be permitted to enter a home to help someone, as the Court allowed in *Stuart*, but would somehow be foreclosed by the Fourth Amendment from stopping a car where, as one example, the officers had received a warning that the driver was

---

[8] *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)).

[9] *See, e.g.*, *Michigan v. Fisher*, 558 U.S. 45 (2009) (per curiam) (warrantless entry into a house acceptable where officers could observe occupant bleeding and throwing objects); *Stuart*, 547 U.S. at 406 (warrantless entry acceptable to break up a fight observed through a window); *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122 (5th Cir. 2014) (no Fourth Amendment violation where officers entered house in attempt to prevent suicide); *United States v. de Jesus-Batres*, 410 F.3d 154 (5th Cir. 2005) (holding that officers acted within the bounds of the Fourth Amendment when they conducted a warrantless search of a garage to check for any injured aliens).

[10] State courts have permitted police officers to justify vehicular stops based on the emergency-aid exception. *See State v. Dunn*, 964 N.E.2d 1037, 1042 (Ohio 2012); *State v. Stapa*, 46 So. 3d 264, 266 (La. App. 2 Cir. 2010).

[11] *See, e.g.*, *United States v. Collins*, 321 F.3d 691, 694–95 (8th Cir. 2003) (permitting officer to lean into parked car because he had reasonable belief that persons were injured); *United States v. Kelly*, 267 F. Supp. 2d 5, 9 (D.D.C. 2003) (no Fourth Amendment violation where officers entered car to treat visible crash victim).

No. 15-30748

armed and intended to kill himself upon reaching a certain destination.[12]

The Fourth Amendment's central concern is warrantless entry into homes,[13] so stops of persons outside the home are "considerably less intrusive."[14] Additionally, a person's privacy interest in his or her vehicle is less substantial than is the interest in one's house.[15] Forcing officers to ignore other evidence when they stop vehicles to render emergency aid would "not meet the needs of law enforcement or the demands of public safety." *Fisher*, 558 U.S. at 49. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Stuart*, 547 U.S. at 403, and the benevolent act of trying to notify a driver that his life is in danger epitomizes reasonableness. Because, in proper circumstances, the emergency-aid exception to the Fourth Amendment's warrant requirement can be used to justify a traffic stop, we turn to whether it can be used to justify this particular stop.

C.

Under existing case law, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'"[16] "The officer's subjective motivation is irrelevant."[17] Thus, in evaluating whether an exigency

---

[12] This was the case in *Dunn*, 964 N.E.2d at 1042.

[13] *E.g., Payton v. New York*, 445 U.S. 573, 585 (1980).

[14] *Illinois v. McArthur*, 531 U.S. 32, 336 (2001).

[15] *See, e.g., Arizona v. Gant*, 556 U.S. 332, 345 (2009) (citing *New York v. Class*, 475 U.S. 106, 112–13 (1986)).

[16] *Stuart*, 547 U.S. at 404 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978) (emphasis in internal quotation added)).

[17] *Id.*; *see also Fisher*, 558 U.S. at 49 ("[T]he test . . . is not what the [officer] believed, but whether there was 'an objectively reasonable basis for believing' that medical assistance was needed, or persons were in danger" (quoting *Stuart*, 547 U.S. at 406)); *Rideau*, 969 F.2d at 1574 ("In assessing the reasonableness of an officer's actions, it is imperative that the facts

actually existed, courts must examine whether there was an objectively reasonable basis for such a belief, divorced from the officer's conduct. And "[w]hen reasonable minds may disagree, we 'will not second guess the judgment of experienced law enforcement officers concerning the risks of a particular situation.'"[18]

"Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may [exist]." *United States v. Jones*, 237 F.3d 716, 720 (5th Cir. 2001). Nevertheless, a court "should consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers."[19] In addition to determining whether there was an objectively reasonable basis for identifying an emergency, courts must decide whether the officer who engaged in conduct without a warrant acted reasonably.[20] The existence of an emergency cannot, by itself, immunize the conduct of the officer from scrutiny.

1.

The objective facts—that is, those divorced from the officers' response to the threat on Toussaint's life—are straightforward. FBI agents overheard a threat. A suspected felon gave an associate permission to kill the defendant,

---

be judged against an objective standard . . . . The officer's state of mind, or his stated justification . . ., is not the focus of our inquiry." (citation and internal quotation marks omitted)).

[18] *United States v. Mata*, 397 F. App'x 39, 39–40 (5th Cir. 2010) (quoting *United States v. Mechacha-Castruita*, 587 F.3d 283, 290 (5th Cir. 2009)).

[19] *United States v. Rodea*, 102 F.3d 1401, 1405 (5th Cir. 1996) (internal quotation marks omitted). *Accord Rideau*, 969 F.2d at 1574 ("We must attempt to put ourselves in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger . . . .").

[20] *See Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1132 (5th Cir. 2014); *see also Stuart*, 547 U.S. at 403–05.

and no one—including the district court—contested that that threat was credible. After intercepting the threat, officers searched for the potential victim, found him, and informed him of it—all within forty-five minutes of the first indication that his life was in danger.

From those objective facts, the district court concluded that the exigency had dissipated by the time the officers pulled Toussaint over, citing the forty-five minutes between threat and arrest, the lack of gunfire or signs of distress in the neighborhood, and the absence of anyone menacing Toussaint's vehicle when officers discovered it. But the main thrust of the district court's theory is not that there was no objectively reasonable basis for concluding an emergency existed, but rather that the officers' subjective actions indicate they did not think one existed. That was error.[21]

In both *Stuart* and *Fisher*, the Court emphasized that the intentions and beliefs of the officers do not inform whether there was an emergency,[22] yet it is obvious from the district court's opinion that it was especially concerned with (1) Roniger's decision to confer with his fellow officers before combing the neighborhood for Toussaint and (2) Cadet's decision to pace the car instead of pulling it over immediately. The district court ignored the directives that the actions of officers when they confront an exigency matter only insofar as they indicate whether there was an objectively reasonable basis for believing an emergency existed and that officers' subjective motivations are never relevant.

---

[21] This is the legal error that infected the district court's factual determinations to which we referred *supra* Part I.A. Because of that error, we review both legal conclusions and factual determinations *de novo. Mask*, 330 F.3d at 335.

[22] *See Fisher*, 558 U.S. at 49 (("[T]he test . . . is not what the [police officer] believed, but whether there was 'an objectively reasonable basis for believing' that medical assistance was needed, or persons were in danger.'" (quoting *Stuart*, 547 U.S. at 406)); *Stuart*, 547 U.S. at 505 (noting that "it does not matter" whether the intent of the officers was to make arrests or to respond to an emergency).

No. 15-30748

A district court not only must examine the actions of the officers but also must consider whether an objectively reasonable person might have acted differently from how the officers responded. This case is a hornbook example of precisely that distinction, which the district court should have recognized.

Again we look to the objective facts. Police officers receive what all agree is a credible threat against a specific individual, who is located within a specific area of the city and is driving a particularly-described vehicle. Then 45 minutes pass without incident. But no one could conclude from just those facts that was no objectively reasonable basis for thinking an emergency persisted. A period of 45 minutes is far less time than it may take to pull off a hit.[23] And that there was no gunfire or any suspicious cars following Toussaint is not any sort of proof that the hit had been canceled; to the contrary, it is more than objectively reasonable to conclude that Williams's associate had not yet conducted the hit.

Those two uncontroversial propositions provide more than enough support to conclude that there was an "objectively reasonable basis" for believing the emergency had not ended. *See Stuart*, 547 U.S. at 406. Because the emergency had not dissolved after 45 minutes, we examine whether the officers' actions in responding to it were reasonable.

2.

The district court mainly objected to two actions the officers took before

---

[23] The government cites at least one example of a hit intercepted on wiretap that took longer than 45 minutes to occur. Such an example is apposite but unnecessary. It stands to reason that planned hits intercepted over wiretap—indeed, planned killings generally—do not expire after 45 minutes. Toussaint has not pointed to any precedent from this circuit or elsewhere suggesting that emergencies disappear altogether after 45 minutes. Inasmuch as precedent points in any direction, it shows that exigencies can persist longer than that. *See de Jesus-Batres*, 410 F.3d at 159 ("[T]he delay of approximately 45 minutes before the officers entered the garage does not by itself preclude a finding of exigent circumstances.").

stopping Toussaint. First, it concluded that the officers should not have met at a gas station to plan how they would find Toussaint while protecting themselves. Second, it theorized that Cadet should not have "paced" his vehicle before pulling Toussaint over. But that also was legal error.

"Our purpose is *not* to examine each act in isolation and inquire whether the officers *could* have acted differently." *United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997) (en banc). We view those decisions—made by police on the ground, with comparatively minimal time to deliberate—with "20/20 hindsight"; it is not our job to "second-guess[] officers' actions" in these situations. *Rice*, 770 F.3d at 1132. Given those warnings, the officers' actions, taken as a whole, were a reasonable response to the emergency.

The suppression order is REVERSED, and this matter is REMANDED for proceedings as needed.